# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: | )  |
|     GWENDOLYN O. RICE, | ) |
| | ) |
| THE NEWPORT CONDOMINIUM | ) |
| ASSOCIATION, | )  Case Number: 17-16499 |
| an Illinois Not-For-Profit Corporation, | )  Judge Jack B. Schmetterer |
| | )  Bankruptcy - Chapter 13 |
|     Creditor, | ) |
| v. | ) |
| | ) |
| GWENDOLYN O. RICE, | ) |
|     Debtor. | ) |

## NOTICE OF MOTION

TO:   See Attached Service List

    On June 21, 2017 at 9:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Jack B. Schmetterer, or any judge sitting in his stead, in Room 682 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604 and then and there present the attached ***Secured Creditor The Newport Condominium Association's Motion for Dismissal with 180-Day Bar to Re-file or in the alternative, for Relief from Stay***.

CHARLES M. KEOUGH/DAWN L. MOODY
GABRIELLA R. COMSTOCK/JONATHAN D. WASSELL
DAMON M. FISCH/NICHOLAS R. BAUMGARTNER
BRYAN M. WILEY/ROBERT B. QUAID
KEOUGH AND MOODY, P.C.
Attorney Number 06283567
Attorney for Creditor
114 East Van Buren
Naperville, IL 60540
(630) 369-2700


  /s/ Dawn L. Moody
Attorneys for Creditor

## PROOF OF SERVICE

    I, DAWN L. MOODY, an attorney, on oath state, I served this Notice and Motion for Dismissal with 180-Day Bar to Re-file or in the alternative, for Relief from Stay to the persons named on the service list via the method listed at or before 4:00 p.m. on June 13, 2017.

                                                /s/ Dawn L. Moody

**KEOUGH & MOODY COLLECTS DEBTS FOR ASSOCIATIONS.  ANY AND ALL INFORMATION OBTAINED CAN AND WILL BE USED FOR THIS PURPOSE.**

## SERVICE LIST

1. Gwendolyn O. Rice - via regular mail
   4800 S. Chicago Beach Drive, Apt. 1907N
   Chicago, IL 60615

2. Jason A. Diaz - via regular mail and CM/ECF
   John P. Wonais - via regular mail and CM/ECF
   The Semrad Law Firm, LLC
   20 South Clark Street, 28th Floor
   Chicago, IL 60603
   jdiaz@semradlaw.com
   jwonais@semradlaw.com

3. Tom Vaughn - via regular mail and CM/ECF
   55 E. Monroe Street, Suite 3850
   Chicago, IL 60603

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | |
|    GWENDOLYN O. RICE, ) | |
| ) | |
| THE NEWPORT CONDOMINIUM ) | |
| ASSOCIATION, ) | Case Number: 17-16499 |
| an Illinois Not-For-Profit Corporation, ) | Judge Jack B. Schmetterer |
| ) | Bankruptcy - Chapter 13 |
|                 Creditor, ) | |
|       v. ) | |
| ) | |
| GWENDOLYN O. RICE, ) | |
|                 Debtor. ) | |

**SECURED CREDITOR THE NEWPORT CONDOMINIUM ASSOCIATION'S MOTION FOR DISMISSAL WITH 180-DAY BAR TO RE-FILE OR IN THE ALTERNATIVE, FOR RELIEF FROM STAY**

NOW COMES the Secured Creditor, THE NEWPORT CONDOMINIUM ASSOCIATION, by and through its counsel, Charles M. Keough, Dawn L. Moody, Gabriella R. Comstock, Jonathan D. Wassell, Damon M. Fisch, Nicholas R. Baumgartner, Bryan M. Wiley and Robert B. Quaid of Keough and Moody, P.C. who respectfully prays that this Court dismiss this case pursuant to 11 U.S.C. Sections 109 and/or 349(a) and 105 with a 180-Day Bar to Re-file or in the alternative, for the entry of an order granting relief from the automatic stay pursuant to 11 U.S.C. Section 362(d), and in support thereof states:

(1)    On May 30, 2017, the above captioned Chapter 13 was filed.

(2)    The Debtor, Gwendolyn O. Rice, is the owner of Units 1906N, 1907N and 1912N located at 4800 S. Chicago Beach Drive, Chicago, IL 60516.

(3)    The foregoing properties are part of The Newport Condominium Association and is subject

to the provisions of the Declaration of Condominium Ownership for The Newport Condominium (hereinafter "Declaration"), which was recorded as Document No. 24730609 in the Office of the Cook County Recorder of Deeds, and subsequently amended.

(4)   The Association is a party in interest and is secured by virtue of its Declaration.

(5)   Pursuant to the terms of the Declaration, the Debtor is required to make monthly assessment payments in the amount of $582.14 for Unit 1906N; $582.14 for Unit 1912N and a total of $908.52 for Unit 1907N, to the Creditor. If assessments are not paid by the 10th day of the month in which they are due, a late charge in the amount of $75.00 assessed to each account.

(6)   Pursuant to the terms of the Declaration and Section 9.2 of the Illinois Condominium Property Act, the Debtor is required to pay all expenses connected with proceedings to collect unpaid assessments and enforce the Declaration terms. These amounts are assessed to the Debtor and deemed a part of the Common Expenses.

(7)   The Debtor has failed to make current monthly assessment payments to the Creditor in conformity with the Declaration since prior to the filing of this bankruptcy action. Attached hereto are true and accurate statements of accounts for each of the units.

(8)   As of June 12, 2017, the total amount due to the Creditor for post-petition assessments, late fees, special assessments, attorney's fees and common expenses on all three (3) accounts is $41,617.50.

(9)   Debtor has filed four (4) prior bankruptcy actions since July, 2013: 13-26920, 14-43859, 16-04355, and 17-11006. The prior bankruptcy actions were all dismissed on a Creditor's or the Trustee's Motion, with the exception of 17-11006, which was voluntarily dismissed by the Debtor.

(10) On March 10, 2017, Creditor filed three (3) separate forcible entry and detainer actions, specific to each Unit, against Debtor under case numbers 2017 M1 704237, 2017 M1 704238 and 2017 M1 704239, which were dismissed with leave to reinstate on April 11, 2017 due to the bankruptcy action filed under case number 17-11006.

(11) On May 22, 2017, the Court granted Creditor's Motion to Reinstate the forcible entry and detainer actions, and continued each matter to June 16, 2017 for return of alias summons.

(12) In an effort to continue to avoid Creditor's collection efforts and in bad faith, Debtor filed this, her fifth bankruptcy action on May 30, 2017. Despite receiving numerous communications from Creditor's counsel prior to the filing of this, as well as the prior bankruptcy action, Debtor forwarded notification of this bankruptcy filing to Creditor's attorney's prior address.

(13) Creditor asserts that all such bankruptcy actions have been filed in bad faith in an attempt to delay and hinder the Creditor from collecting on its debt.

(14) Debtor's history of serial filing without a change of circumstance and the Debtor's past failure to strictly comply with this provisions of the Bankruptcy Code in her past filings evidences bad faith and an abuse of the provisions, purposes, and spirit of the Bankruptcy Code.

(15) Pursuant to the decisions of the United States Court of Appeals for the Seventh Circuit, filing of a Chapter 13 petition in bad faith constitutes grounds for dismissal "for cause." See In the Matter of Love, 957 F.2d 1350, 1354 (7th Cir. 1992).

(16) Per 11 U.S.C. Sections 349(a) and 105, this Court has the discretion to make dismissal of Debtor's case a dismissal with prejudice and with a 180-Bar to subsequent re-filings. A finding of bad faith and improper filing by this Court is good and sufficient cause for so ruling.

(17) Per 11 U.S.C. 109, this Court has the discretion to dismissal of Debtor's case with a 180-Bar to subsequent re-filings. A finding of bad faith and that the Debtor has failed to properly prosecute her cases by this Court is good and sufficient cause for so ruling.

(18) The filing of a fifth bankruptcy petition where Debtor has failed to meet the requirements of prior Chapter 13 filings, forcing Creditor to again delay its collection efforts is evidence that this bankruptcy filing was undertaken for an improper purpose without actual ability to reorganize.

(19) The Creditor continues to lack adequate protection due to the Debtor's failure to make regular, current monthly payments to the Creditor.

(20) Debtor's failure to make assessment payments, and owing the Association in excess of $40,000.00 in past due amounts, jeopardizes the Creditor's ability to meet its scheduled budget or fund reserves, both of which are essential to the maintenance, upkeep, repair and replacement of the common areas as required by the Creditor pursuant to the Declaration recorded in Cook County, Illinois.

(21) Further delay or the filing of additional bankruptcy actions will cause serious harm to Creditor, a not-for-profit condominium association, as it will incur additional attorney's fees and costs in addressing this debt, and no remedy other than a bar to re-file will protect Creditor from this harm.

(22) That sufficient grounds exist to dismiss Debtor's case for cause pursuant to 11 U.S.C. Section 1307, including: Debtor's material default, Debtor's plan has been proposed in bad faith and

does not include full repayment of Creditor's pre-petition Debt and there has been no change in circumstances since the dismissal of Debtor's prior cases.

(23) That sufficient grounds exist for said dismissal to be with a 180-Day Bar to Re-file pursuant to 11 U.S.C. Sections 1109 and/or 349(a) and 105 as Debtor's plan is proposed in bad faith and the filing of her fifth bankruptcy petition since July 2013.

(24) Creditor will continue to suffer severe harm if Debtor is not barred from re-filing.

(25) In the alternative, sufficient grounds exist to grant the Creditor relief from the stay pursuant to Section 11 U.S.C. Section 362 for cause.

(26) For the reasons set forth above, it would be inequitable to delay the enforcement of any order granting relief from the automatic stay with respect to the Creditor; therefore, Bankruptcy Rule 4001(a)(3) should be waived.

WHEREFORE, Creditor, THE NEWPORT CONDOMINIUM ASSOCIATION, respectfully requests this court to grant its MOTION FOR DISMISSAL WITH 180-DAY BAR TO RE-FILE OR IN THE ALTERNATIVE, FOR RELIEF FROM STAY, for Bankruptcy Rule 4001(a)(3) be waived, and for any and all further relief this court deems just and proper.

Respectfully Submitted,
THE NEWPORT CONDOMINIUM ASSOCIATION,

By:      /s/ Dawn L. Moody
    One of its attorneys

CHARLES M. KEOUGH/DAWN L. MOODY
GABRIELLA R. COMSTOCK/JONATHAN D. WASSELL
DAMON M. FISCH/NICHOLAS R. BAUMGARTNER
BRYAN M. WILEY/ROBERT B. QUAID
KEOUGH AND MOODY, P.C.
Attorney Number 06283567
Attorney for Creditor
114 East Van Buren
Naperville, IL 60540
(630) 369-2700
S:\data\client\Newport Condo Association\collection\Rice\17-16499\Mt.Dismiss-Relief.wpd

**KEOUGH & MOODY COLLECTS DEBTS FOR ASSOCIATIONS. ANY AND ALL INFORMATION OBTAINED CAN AND WILL BE USED FOR THIS PURPOSE.**

24 730 609

# DECLARATION OF CONDOMINIUM OWNERSHIP

## FOR THE

## NEWPORT CONDOMINIUM

NAME: THE NEWPORT CONDOMINIUM

ADDRESS: 4800 SOUTH LAKE SHORE DRIVE
CHICAGO, ILLINOIS

THIS INSTRUMENT PREPARED BY:

Brian Meltzer
Schwartz & Freeman
One IBM Plaza - Suite 4530
Chicago, Illinois 60611

prior written notice to the Association and First Mortgagees who specifically request such notice. The premiums for such insurance shall be Common Expenses.

5.04   OWNER'S RESPONSIBILITY: Each Owner shall be responsible for his own insurance on the contents of his own Unit and furnishings and personal property therein, and his personal property stored elsewhere on the Property, and his personal liability to the extent not covered by the liability insurance for all of the Owners obtained as part of the Common Expenses as above provided, and the Board shall have no obligation whatsoever to obtain any such insurance coverage on behalf of the Owners. Each Owner shall promptly report, in writing to the Board, all additions, alterations or improvements to his Unit without prior request from the Board and shall reimburse the Board for any additional insurance premiums attributable thereto, and shall be responsible for any deficiency in any insurance loss recovery resulting from his failure to so notify the Board. The Board shall not be responsible for obtaining insurance on such additions, alterations or improvements unless and until such Owner shall make such report and request the Board in writing to obtain such insurance, and shall make arrangements satisfactory to the Board for such additional premiums; and upon the failure of such Owner so to do, the Board shall not be obligated to apply any insurance proceeds to restore the affected Unit to a condition better than the condition existing prior to the making of such additions, alterations or improvements.

5.05   WAIVER OF SUBROGATION: Each Owner hereby waives and releases any and all claims which he may have against any other Owner, the Association, its Directors and Officers, the Trustee, the Developer, the manager and the managing agent if any, and their respective employees and agents, for damage to the Common Elements, the Units, or to any personal property located in the Units or Common Elements, caused by fire or other casualty, to the extent that such damage is covered by fire or other form of casualty insurance, and to the extent this release is allowed by policies for such fire or other casualty insurance.

5.06   REPAIR OR RECONSTRUCTION:

   (a)   In the case of damage by fire or other disaster to a portion of the Property where the insurance proceeds are sufficient to repair or reconstruct the building, then the proceeds shall be used to repair or reconstruct the building.

   (b)   In the case of damage by fire or other disaster to a portion of the Property where the insurance proceeds are insufficient to repair or reconstruct the building as provided under the Act, the following procedure shall be followed:

       (1)   A meeting of the Owners shall be held not later than the first to occur of (i) the expiration of thirty (30) days after the final adjustment of the insurance claims or (ii) the expiration of ninety (90) days after the occurrence which caused the damage.

       (2)   At the meeting, the Board shall present an estimate of the cost of repair or reconstruction, together with an estimate of the amount thereof which must be raised by way of special assessment and a proposed

- 14 -

24 730 609

(d)    If the building is not repaired or reconstructed, then the damaged portion of the building shall be razed, or secured and otherwise maintained in conformance with the rules or standards adopted from time to time by the Board.

5.07    CONDEMNATION:  In the case of a taking or condemnation by competent authority of any part of the Property, the Association shall, if necessary, restore the improvements in the remaining portion of the Property to conform as closely as possible to the general design, structure and materials used with respect to the improvements as they existed prior to the taking or condemnation. In the event that part or all of one or more Units is taken or condemned, then the portions so taken or condemned shall be deemed to have been removed from the provisions of the Declaration and the Act and the court which has jurisdiction of the action shall adjust the Undivided Interests of the remaining Units in a just and equitable manner and as provided under the Act, and if the court fails to make such adjustment, such adjustment may be made by the Board.  The President and Secretary of the Association shall execute and Record an instrument on behalf of the Association as required by the Act which amends this Declaration, effective as of the effective date of the taking or condemnation, to reflect the removal of property and adjustments, if any, in the Undivided Interests as a result of an occurrence covered by this Section.  From and after the effective date of the amendment referred to in the preceding sentence, the Owner of a Unit which is removed in part or in whole from the provisions of this Declaration shall only be liable for the payment of assessments based on the Undivided Interest, if any, allocated to the Unit in the amendment.

### ARTICLE SIX
### Assessments

6.01    CREATION OF LIEN AND PERSONAL OBLIGATION:  The Developer, for each Unit Ownership hereby covenants, and each Owner of a Unit Ownership by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, shall be and is deemed to covenant and hereby agrees to pay to the Association such assessments or other charges or payments as are levied pursuant to the provisions of this Declaration.  Such assessments, or other charges or payments, together with interest thereon and costs of collection, if any, as herein provided, shall be a charge on the Unit Ownership and shall be a continuing lien upon the Unit Ownership against which each such assessment is made.  Each such assessment, or other charge or payment, together with such interests and costs, shall also be the personal obligation of the Owner of such Unit Ownership at the time when the assessment or other charge or payment is due.

6.02    PURPOSE OF ASSESSMENTS:  The assessments levied by the Association shall be exclusively for the purposes of promoting the recreation, health, safety, and welfare of members of the Association, to administer the affairs of the Association, and to pay the Common Expenses.

6.03    ANNUAL ASSESSMENT:  Each year on or before November 1, and at least thirty (30) days before final adoption thereof, the Board shall furnish each Owner with a proposed budget for the ensuing calendar year which shall show the following, with reasonable explanations and itemizations:

- 16 -

(a) The estimated Common Expenses (other than Garage Expenses);

(b) The estimated amount, if any, to maintain adequate reserves for Common Expenses (other than Garage Expenses) including, without limitation, amounts to maintain the Capital Reserve;

(c) The estimated net available cash receipts from sources other than assessments, but not including receipts from the operation of the Garage;

(d) The amount of the "Annual Assessment", which is hereby defined as the amount determined in (a) above, plus the amount determined in (b) above, minus the amount determined in (c) above, minus excess funds, if any, from the current year's operation;

(e) That portion of the Annual Assessment which shall be payable by the Owner with respect to his Unit each month until the next Annual Assessment or revised Annual Assessment becomes effective, which monthly portion shall be equal to one-twelfth (1/12th) of the Annual Assessment multiplied by the Unit's Undivided Interest;

(f) The estimated Garage Expenses;

(g) The estimated amount, if any, to maintain adequate reserves for Garage Expenses;

(h) The estimated net available cash receipts from sources other than assessments in connection with the operation of the Garage;

(i) The amount of the "Garage Assessment," which is hereby defined as the amount determined in (f) above, plus the amount determined in (g) above, minus the amount determined in (h) above, minus excess funds, if any, from the current year's operation of the Garage;

(j) That portion of the Garage Assessment which shall be payable by the Owner of each Unit which has a Garage Right each month until the next Garage Assessment or revised Garage Assessment becomes effective, which monthly portion shall be equal to one-twelfth (1/12th) of the Garage Assessment divided by the total number of Garage Rights.

6.04 PAYMENT OF ANNUAL ASSESSMENT: On or before the 1st day of January of the ensuing year, and on or before the 1st day of each and every month thereafter until the effective date of the next Annual Assessment or Garage Assessment, each Owner of a Unit shall pay to the Association, or as it may direct, that portion of the Annual Assessment and Garage Assessment, if any, which is payable by such Owner. The Developer shall pay Annual Assessments for all Units owned by Developer or Trustee and shall pay Garage Assessments for all Garage Rights deemed to be held by Developer under the terms of this Declaration.

6.05 REVISED ANNUAL ASSESSMENT: If the Annual Assessment or Garage Assessment proves to exceed funds reasonably needed, then the Board may decrease the assessments payable under Section 6.03 as of the first day of a month by the giving of written notice

- 17 -

24 730 609

thereof (together with a revised budget for the balance of the year and reasons for the decrease) not less than ten days prior to the effective date of the decreased assessment.

6.06 SPECIAL ASSESSMENT: The Board may levy a special assessment as provided in this Section (i) to pay (or build up reserves to pay) extraordinary expenses incurred (or to be incurred) by the Association for a specific purpose including, without limitation, to make additions, alterations or improvements to the Common Elements, or (ii) to cover an unanticipated deficit under the current or prior year's budget. Any special assessment, which will require the aggregate payment with respect to a Unit of the greater of (a) $300 or (b) five (5) times the most recent monthly assessment shall be subject to approval by the affirmative vote of Voting Members representing at least two-thirds (2/3) of the votes cast at a meeting of the Owners duly called for the purpose of approving the assessment. Special assessments made with respect to the Garage shall be shared equally among the holders of Garage Rights. All other special assessments shall be levied against Owners based on Undivided Interests. The Board shall serve notice of a special assessment on all Owners by a statement in writing giving the amount and reasons therefor, and the special assessment shall be payable in such manner and on such terms as shall be fixed by the Board. Any assessments collected pursuant to this Section (other than those to cover an unanticipated deficit under the current or prior year's budget) shall be segregated in a special account and used only for the specific purpose set forth in the notice of assessment.

6.07 CAPITAL RESERVE: The Association shall segregate and maintain a special reserve account to be used solely for making capital expenditures in connection with the Common Elements (the "Capital Reserve"). The Board shall determine the appropriate level of the Capital Reserve based on a periodic review of the useful life of improvements to the Common Elements and equipment owned by the Association as well as periodic projections of the cost of anticipated major repairs or improvements to the Common Elements or the purchase of equipment to be used by the Association in connection with its duties hereunder. Each budget shall disclose that percentage of the Annual Assessment which shall be added to the Capital Reserve and each Owner shall be deemed to make a capital contribution to the Association equal to such percentage multiplied by each installment of the Annual Assessment paid by such Owner.

6.08 INITIAL CAPITAL CONTRIBUTION: Upon the closing of the first sale of a Unit by the Developer to a purchaser for value prior to December 31, 1980, the purchasing Owner shall make a capital contribution to the Association in an amount equal to two (2) months' Annual Assessment at the rate in effect with respect to the Unit under the first budget of the Association. On January 1, 1981, the Developer shall pay to the Association a two (2) months' assessment based on the first budget of the Association on all unconveyed Units. Said amounts shall be held and used by the Association for its working capital needs.

24 730 609

6.09 NONPAYMENT OF ASSESSMENTS: Any assessments or other charges or payments which an Owner is required to make or is liable for hereunder which are not paid when due shall be deemed delinquent. If an assessment or other charge or payment is not paid within thirty (30) days after the due date, it shall bear

- 18 -

interest from the due date at the highest legal rate then permitted in Illinois, and the Board (i) may bring an action against the Owner personally obligated to pay the same, together with interest, costs and reasonable attorneys' fees of any such action, which shall be added to the amount of such assessment or other charge or payment and shall be included in any judgment rendered in such action and (ii) may enforce and foreclose any lien which it has or which may exist for its benefit. No Owner may waive or otherwise escape liability for the assessments or other charges or payment provided for herein by nonuse, abandonment or transfer of his Unit.

6.10   ASSOCIATION'S LIEN SUBORDINATED TO MORTGAGES:  The lien on each Unit Ownership provided for in Section 6.01 for assessments or other charges or payments shall be subordinate to the lien of any first mortgage on the Unit Ownership recorded prior to the date that any such assessments or other charges or payments become due. Except as hereinafter provided, the lien provided for in Section 6.01 shall not be affected by any transfer of title to the Unit Ownership. Where title to the Unit Ownership is transferred pursuant to a decree of foreclosure or by deed or assignment in lieu of foreclosure, such transfer of title shall to the extent permitted by law extinguish the lien for any assessments or other charges or payments under Section 6.01 which became due prior to (i) the date of the transfer of title or (ii) the date on which the transferee comes into possession of the Unit, whichever occurs first. However, the transferee of a Unit Ownership shall be liable for his share of any assessments or other charges or payments with respect to which a lien against his Unit Ownership has been extinguished pursuant to the preceding sentence which are reallocated among the Owners pursuant to a subsequently adopted annual, revised or special assessment, and nonpayment thereof shall result in a lien against the transferee's Unit Ownership as provided in Section 6.01.

ARTICLE SEVEN
Remedies for Breach or Violation

7.01   SELF-HELP BY BOARD:  In the event of a violation by an Owner of the provisions, covenants or restrictions of the Act, the Declaration, the By-Laws, or rules or regulations of the Board, where such violation or breach may be cured or abated by affirmative action, the the Board, upon not less than 10 days prior written notice, shall have the right to enter upon that part of the Property where the violation or breach exists and summarily abate, remove or do whatever else may be necessary to correct such violation or breach. Any and all expenses in connection with the exercise of the right provided by this section shall be charged to and assessed against the violating Owner.

7.02   INVOLUNTARY SALE:  If any Owner (either by his own conduct or by the conduct of any other occupant of his Unit) shall violate any of the covenants or restrictions or provisions of this Declaration, the By-Laws, or the rules or regulations adopted by the Board, and such violations shall not be cured within thirty (30) days after notice in writing from the Board, or shall reoccur more than once thereafter, then the Board shall have the power to issue to said defaulting Owner a 10-day notice in writing to terminate the rights of said defaulting Owner to

- 19 -

continue as an Owner and to continue to occupy, use or control his Unit, and thereupon an action may be filed by the Board against said defaulting Owner for a decree declaring the termination of said defaulting Owner's right to occupy, use or control the Unit owned by him on account of said violation, and ordering that all the right, title and interest of said defaulting Owner in the Property shall be sold (subject to the lien of any existing mortgage) at a judicial sale upon such notice and terms as the court shall determine, except that the court shall enjoin and restrain the defaulting Owner from reacquiring his interest at the judicial sale. The proceeds of any such judicial sale shall first be paid to discharge court costs, court reporter charges, reasonable attorneys' fees and all other expenses of the proceeding and sale, and all such items shall be taxed against said defaulting Owner in the decree. Any balance of proceeds, after satisfaction of such charges and any unpaid assessments hereunder or any liens, shall be paid to the defaulting Owner. Upon the confirmation of such sale, the purchaser shall thereupon be entitled to a deed to the Unit and to immediate possession of the Unit sold and may apply to the court for a writ of assistance for the purpose of acquiring such possession, and it shall be a condition of any such sale, and the decree shall so provide, that the purchaser shall take the Unit so purchased subject to this Declaration.

7.03    FORCIBLE DETAINER: In the event that an Owner is delinquent in payment of his proportionate share of the Common Expenses or any other charges or payments required to be paid by the Owner hereunder, the Board shall have the right to take possession of the Owner's Unit and to maintain for the benefit of all other Owners an action for possession in the manner prescribed by "An Act in Regard to Forcible Entry and Detainer", as provided in the Act.

7.04    OTHER REMEDIES OF THE BOARD: In addition to or in conjunction with the remedies set forth above, in the event of a violation by an Owner of the Act, this Declaration, the By-Laws, or rules and regulations of the Board, the Board or its agents shall have the right to bring an action at law or in equity against the Owner and/or others as permitted by law including, without limitation, (i) to foreclose a lien against the Unit Ownership, (ii) for damages, injunctive relief, or specific performance, (iii) for judgment or for the payment of money and the collection thereof, (iv) for any combination of the remedies set forth in this Article or (v) for any other relief which the Board may deem necessary or appropriate. Any and all rights and remedies provided for in this Article may be exercised at any time and from time to time cumulatively or otherwise by the Board in its discretion. The failure of the Board to enforce any provisions of this Declaration, the By-Laws or rules and regulations of the Board shall in no event be deemed a waiver of the right to do so thereafter.

7.05    COSTS AND EXPENSES: All expenses incurred by the Board in connection with any actions, proceedings or self-help in connection with exercise of its rights and remedies under this Article, including without limitation, court costs, attorneys' fees and all other fees and expenses, and all damages, liquidated or otherwise, together with interest thereon at the highest legal contract rate of interest then permitted in Illinois until paid, shall be charged to and assessed against the defaulting Owner,

24 730 609

- 20 -

and the Association shall have a lien for all the same, upon his Unit Ownership as provided in Section 6.01.

7.06    ENFORCEMENT BY OWNERS: Enforcement of the provisions contained in this Declaration and the rules and regulations adopted hereunder may be by any proceeding at law or in equity by any aggrieved Owner against any person or persons violating or attempting to violate any such provisions, either to restrain such violation or to recover damages, and against a Unit Ownership to enforce any lien created hereunder.

### ARTICLE EIGHT
### Amendments

8.01    SPECIAL AMENDMENT: Developer and/or Trustee reserves the right and power to record a special amendment ("Special Amendment") to this Declaration at any time and from time to time which amends this Declaration (i) to comply with requirements of the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Federal Housing Association, the Veteran's Administration, or any other governmental agency or any other public, quasi-public or private entity which performs (or may in the future perform) functions similar to those currently performed by such entities, (ii) to induce any of such agencies or entities to make, purchase, sell, insure, or guarantee first mortgages covering Unit Ownerships, (iii) to bring this Declaration into compliance with the Act or (iv) to correct clerical or typographical errors in this Declaration or any Exhibit hereto or any supplement or amendment thereto. In furtherance of the foregoing, a power coupled with an interest is hereby reserved and granted to the Developer and/or Trustee to vote in favor of, make, or consent to a Special Amendment on behalf of each Owner as proxy or attorney-in-fact, as the case may be. Each deed, mortgage, trust deed, other evidence of obligation, or other instrument affecting a Unit and the acceptance thereof shall be deemed to be a grant and acknowledgement of, and a consent to the reservation of, the power to the Developer and/or Trustee to vote in favor of, make, execute and Record Special Amendments. The right of the Developer and Trustee to act pursuant to rights reserved or granted under this Section shall terminate at such time as the Trustee or Developer no longer holds or controls title to a Unit.

8.02    AMENDMENT BY OWNERS: Subject to the provisions of Section 8.01 and Article Nine and except as otherwise provided in the Act, the provisions of this Declaration may be amended, modified, enlarged or otherwise changed in whole or in part by the affirmative vote of Voting Members (either in person or by proxy) representing at least Sixty-Seven Percent (67%) of the total votes based on Undivided Interests or by an instrument executed by Owners of Unit Ownerships with an aggregate Undivided Interest of at least 67%; except that (i) the provisions relating to the rights of Developer or Trustee may be amended only upon the written consent of the Developer, (ii) the provisions of Article Nine, Section 6.10 or any other provisions which specifically grants rights to the First Mortgagees may be amended only with the written consent of all First Mortgagees and (iii) the provisions of this Section may be amended only with

24 730 609

- 21 -

| | | |
|---|---|---|
| 06/12/2017 | **Lieberman Management Services, Inc.** | 08:47 AM |
| Prepared By: LMSCluster01 | **Occupant Ledger** | |

**The account balance may not reflect the total balance due.**
**The information provided shall not be used to determine the amount to pay balance in full.**
**Owners should contact the Association's attorney to obtain current balance information.**

| | | | |
|---|---|---|---|
| Unit Reference Number: | 00-0501-1906 03 | Occupant Type: | Current |
| Property Name: | THE NEWPORT CONDOMINIUM ASSOCIATION | | |
| Name: | Gwendolyn Rice | | |
| Address: | 4800 S Chicago Beach Dr #1906N | Unit Number: | 1906 |
| City, State, Zip: | Chicago IL 60615 | | |

| | |
|---|---|
| Bill To: Gwendolyn Rice | |
| (RE: 4800 S Chgo Beach #1906N) | Account Balance: $14,044.85 |
| 4800 S Chicago Beach Dr #1907N | Auto Pay: No |
| Chicago, IL 60615 | |

Date Printed: 06/12/2017
Account Status: COLLECTIONS
Per your request, a statement of account follows. Thank you. Resident Services (847)459-0000

### Charge Schedule

| Charge Code | Charge Description | Charge Frequency | Start Date | Stop Date | Current Charge Amount | Increase Date | New Amount |
|---|---|---|---|---|---|---|---|
| AM | Monthly Assessment | MO | 07/01/2017 | 12/31/2017 | 582.14 | N/A | N/A |

### Chronological History

| Date | Code | Description | Chg. Amount | Adj. / Credit Amount | Balance |
|---|---|---|---|---|---|
| 06/08/2017 | PY | Lckbx Pmt 4337662 | | -10,000.00 | 14,044.85 |
| 06/05/2017 | Chg LG | dismissal of bankruptcy 180095 | 23.20 | | 24,044.85 |
| 06/05/2017 | Chg LG | Review of Bankruptcy 180096 | 72.50 | | 24,021.65 |
| 06/05/2017 | Chg LG | Motion to reinstate Forcible 180093 | 391.36 | | 23,949.15 |
| 06/01/2017 | Chg AM | Monthly Assessment | 582.14 | | 23,557.79 |
| 05/30/2017 | Chg MI | 4/13/17 Replaced mailbox lock | 25.00 | | 22,975.65 |
| 05/30/2017 | PY | Lckbx Pmt 2748622 | | -657.00 | 22,950.65 |
| 05/12/2017 | Chg LF | Late Fee | 75.00 | | 23,607.65 |
| 05/08/2017 | Chg MI | Bankruptcy Dismissed | 65.00 | | 23,532.65 |
| 05/08/2017 | Chg MF | Bankruptcy Dismissed | 150.00 | | 23,467.65 |
| 05/08/2017 | Chg LF | Bankruptcy Dismissed | 2,175.00 | | 23,317.65 |
| 05/08/2017 | Chg LG | Bankruptcy Dismissed | 4,159.21 | | 21,142.65 |
| 05/08/2017 | Chg AM | Bankruptcy Dismissed | 16,326.30 | | 16,983.44 |
| 05/01/2017 | Chg AM | From 02 | 582.14 | | 657.14 |

| 04/24/2017 | Chg LF | From 02 | 75.00 | 75.00 |

| | | |
|---|---|---|
| 06/12/2017 | **Lieberman Management Services, Inc.** | 08:44 AM |
| Prepared By: LMSCluster01 | **Occupant Ledger** | |

**The account balance may not reflect the total balance due.**
**The information provided shall not be used to determine the amount to pay balance in full.**
**Owners should contact the Association's attorney to obtain current balance information.**

| | | | |
|---|---|---|---|
| Unit Reference Number: | 00-0501-1907 03 | Occupant Type: | Current |
| Property Name: | THE NEWPORT CONDOMINIUM ASSOCIATION | | |
| Name: | Gwendolyn Rice | | |
| Address: | 4800 S Chicago Beach Dr #1907N | Unit Number: | 1907 |
| City, State, Zip: | Chicago IL 60615 | | |

| | |
|---|---|
| Bill To: Gwendolyn Rice<br>4800 S Chicago Beach Dr #1907N<br>Chicago, IL 60615 | Account Balance: $2,606.47<br>Auto Pay: No |

Date Printed: 06/12/2017
Account Status: COLLECTIONS
Per your request, a statement of account follows. Thank you. Resident Services (847)459-0000

### Charge Schedule

| Charge Code | Charge Description | Charge Frequency | Start Date | Stop Date | Current Charge Amount | Increase Date | New Amount |
|---|---|---|---|---|---|---|---|
| AM | Monthly Assessment | MO | 07/01/2017 | 12/31/2017 | 752.85 | N/A | N/A |
| Garage Assessment | Garage Assessment | N/A | 07/01/2017 | 12/31/2017 | 139.00 | N/A | N/A |
| Health Club | Health Club | N/A | 07/01/2017 | 12/31/2017 | 16.67 | N/A | N/A |

### Chronological History

| Date | Code | Description | Chg. Amount | Adj. / Credit Amount | Balance |
|---|---|---|---|---|---|
| 06/08/2017 | PY | Lckbx Pmt 4337661 | | -12,000.00 | 2,606.47 |
| 06/07/2017 | PY | Lckbx Pmt 0000537 | | -910.00 | 14,606.47 |
| 06/05/2017 | Chg LG | Dismissal of bankruptcy 180098 | 23.20 | | 15,516.47 |
| 06/05/2017 | Chg LG | Review of bankruptcy 180099 | 72.50 | | 15,493.27 |
| 06/05/2017 | Chg LG | Motion to reinstate Forcible 180097 | 391.36 | | 15,420.77 |
| 06/01/2017 | Chg HF | Health Club | 16.67 | | 15,029.41 |
| 06/01/2017 | Chg GM | Garage Assessment | 139.00 | | 15,012.74 |
| 06/01/2017 | Chg AM | Monthly Assessment | 752.85 | | 14,873.74 |
| 05/12/2017 | Chg LF | Late Fee | 75.00 | | 14,120.89 |
| 05/08/2017 | Chg AM | Bankruptcy Dismissed | 7,885.45 | | 14,045.89 |
| 05/08/2017 | Chg GM | Bankruptcy Dismissed | 1,501.00 | | 6,160.44 |
| 05/08/2017 | Chg HF | Bankruptcy Dismissed | 183.37 | | 4,659.44 |
| 05/08/2017 | Chg LF | Bankruptcy Dismissed | 750.00 | | 4,476.07 |

| Date | Code | Description | Amount | Balance |
|---|---|---|---|---|
| 05/08/2017 | Chg LG | Bankruptcy Dismissed | 2,742.55 | 3,726.07 |
| 05/01/2017 | Chg AM | From Pre | 752.85 | 983.52 |
| 05/01/2017 | Chg GM | From Pre | 139.00 | 230.67 |
| 05/01/2017 | Chg HF | From Pre | 16.67 | 91.67 |
| 04/28/2017 | Chg LF | From Pre | 75.00 | 75.00 |

Lieberman Management Services, Inc.            Page 1 of 1
Case 17-16499    Doc 17    Filed 06/13/17    Entered 06/13/17 09:50:16    Desc Main
Document    Page 20 of 20

06/12/2017            **Lieberman Management Services, Inc.**            08:48 AM

Prepared By: LMSCluster01            **Occupant Ledger**

**The account balance may not reflect the total balance due.**
**The information provided shall not be used to determine the amount to pay balance in full.**
**Owners should contact the Association's attorney to obtain current balance information.**

| | | | |
|---|---|---|---|
| Unit Reference Number: | 00-0501-1912 03 | Occupant Type: | Current |
| Property Name: | THE NEWPORT CONDOMINIUM ASSOCIATION | | |
| Name: | Gwendolyn Rice | | |
| Address: | 4800 S Chicago Beach Dr #1912N | Unit Number: | 1912 |
| City, State, Zip: | Chicago IL 60615 | | |

Bill To: Gwendolyn Rice
(RE: 4800 S Chgo Beach #1912N)
4800 S Chicago Beach Dr #1907N
Chicago, IL 60615

Account Balance: $24,966.18
Auto Pay: No

Date Printed: 06/12/2017
Account Status: COLLECTIONS
Per your request, a statement of account follows. Thank you. Resident Services (847)459-0000

### Charge Schedule

| Charge Code | Charge Description | Charge Frequency | Start Date | Stop Date | Current Charge Amount | Increase Date | New Amount |
|---|---|---|---|---|---|---|---|
| AM | Monthly Assessment | MO | 07/01/2017 | 12/31/2017 | 582.14 | N/A | N/A |

### Chronological History

| Date | Code | Description | Chg. Amount | Adj. / Credit Amount | Balance |
|---|---|---|---|---|---|
| 06/08/2017 | PY | Lckbx Pmt 4337663 | | -1,920.00 | 24,966.18 |
| 06/05/2017 | Chg LG | dismissal of bankruptcy 180100 | 23.20 | | 26,886.18 |
| 06/05/2017 | Chg LG | Review of Bankruptcy 180102 | 72.50 | | 26,862.98 |
| 06/05/2017 | Chg LG | Motion to reinstate Forcible 180101 | 391.36 | | 26,790.48 |
| 06/01/2017 | Chg AM | Monthly Assessment | 582.14 | | 26,399.12 |
| 05/30/2017 | PY | Lckbx Pmt 2748623 | | -657.00 | 25,816.98 |
| 05/12/2017 | Chg LF | Late Fee | 75.00 | | 26,473.98 |
| 05/08/2017 | Chg MI | Bankruptcy Dismissed | 10.00 | | 26,398.98 |
| 05/08/2017 | Chg VI | Bankruptcy Dismissed | 100.00 | | 26,388.98 |
| 05/08/2017 | Chg RA | Bankruptcy Dismissed | 1,000.00 | | 26,288.98 |
| 05/08/2017 | Chg LF | Bankruptcy Dismissed | 2,250.00 | | 25,288.98 |
| 05/08/2017 | Chg LG | Bankruptcy Dismissed | 5,615.92 | | 23,038.98 |
| 05/08/2017 | Chg AM | Bankruptcy Dismissed | 16,765.92 | | 17,423.06 |
| 05/01/2017 | Chg AM | From Pre | 582.14 | | 657.14 |
| 04/28/2017 | Chg LF | From Pre | 75.00 | | 75.00 |